# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN W. JOHNSON, | ) | |
| | ) | |
| Claimant, | ) | No. 14-cv-04045 |
| | ) | |
| v. | ) | Jeffrey T. Gilbert |
| | ) | Magistrate Judge |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Steven W. Johnson ("Claimant") seeks review of the final decision of

Respondent Carolyn W. Colvin, Acting Commissioner of Social Security (the "Commissioner"),

terminating Claimant's Disability Insurance Benefits ("DIB") under Title II of the Social

Security Act (the "Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have

consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including

entry of final judgment. [ECF No. 7.] Claimant has moved pursuant to Federal Rule of Civil

Procedure 56 for summary judgment. [ECF No. 23.] The Commissioner has done likewise.

[ECF No. 31.] For the reasons stated below, Claimant's motion for summary judgment is

denied, and the Commissioner's motion for summary judgment is granted. The decision of the

Commissioner is affirmed.

## I. PROCEDURAL HISTORY

In a determination dated July 1, 1994, Claimant was found disabled as of March 13,

1991. (R. 14, 54.) Claimant's disability was determined to have continued in a decision dated

December 8, 2004 (the "comparison point decision" or "CPD"). (R. 14, 72.) On April 14,

2010, it was determined that Claimant was no longer disabled as of April 1, 2010. (R. 54, 56.)

This determination was upheld upon reconsideration on May 7, 2012. (R. 76.) On May 21, 2012, Claimant requested a hearing before an Administrative Law Judge ("the ALJ"). (R. 86.) The requested hearing was then held on November 9, 2012. (R. 28-53.) At that hearing, Claimant appeared and testified. *Id.* A vocational expert (the "VE") appeared at the hearing, and Marlena Johnson, Claimant's daughter, also appeared and testified. *Id.*

On December 10, 2012, the ALJ issued a written decision. (R. 14-23.) In the decision, the ALJ applied the eight-step sequential evaluation process used in medical improvement cases and determined Claimant's disability ended as of April 1, 2010. (R. 14.); *see* 20 C.F.R. § 404.1594(f). At step one, the ALJ found Claimant had not engaged in substantial gainful activity ("SGA") through April 1, 2010. (R. 16.) The ALJ found Claimant had the severe impairment of back pain, and the non-severe impairments of affective disorder, polysubstance abuse, obesity, hypertension, ataxia and pacemaker placement. (R. 16-17.) At step two, the ALJ found Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1594(f)(2)). (R. 17.) At step three, the ALJ found medical improvement had occurred as of April 1, 2010. (R. 18.) At step four, the ALJ found Claimant's medical improvement was related to his ability to work. *Id.* The ALJ skipped step five because he found medical improvement related to Claimant's ability to work. At step six, the ALJ found Claimant continued to have a severe impairment of back pain. *Id.*

The ALJ then assessed Claimant's residual functional capacity ("RFC") as of April 1, 2010, and found Claimant had the RFC to perform the full range of medium work as defined in 20 C.F.R. § 404.1567(c). (R. 19.) At step seven, the ALJ determined Claimant had no past relevant work. *Id.* Finally, at step eight, considering Claimant's age, education, work

experience, and RFC, the ALJ found Claimant was able to perform a significant number of jobs in the national economy as of April 1, 2010. (R. 22.) The ALJ found Claimant's disability ended April 1, 2010 (20 C.F.R. 404.1594(f)(8)). (R. 23.)

On December 10, 2012, Claimant sought review of the ALJ's decision. *See* R. 1. On March 28, 2014, the Social Security Appeals Council denied the request. *Id.* That denial made the ALJ's opinion the final decision of the Commissioner. *Id. See also Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Claimant now seeks review in this Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). A claimant then may seek review of this final decision in the district court. *Id.* Judicial review is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. *Nelms*, 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the district court will not uphold the ALJ's findings if the ALJ did not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). In other

words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009). Though the substantial evidence standard is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue,* 534 F.3d 663, 665 (7th Cir. 2008). The court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence . . . ." *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008).

### III. ANALYSIS

Claimant asserts the ALJ made three errors. First, Claimant argues that the ALJ did not meet his heightened duty to develop a full and fair record after failing to obtain a valid waiver of counsel. Second, Claimant contends that the ALJ based his finding of medical improvement in Claimant's mental impairments on insufficient evidence. Third, Claimant asserts that the ALJ failed to adequately address the combined effects of Claimant's impairments in the RFC finding. The Court finds the ALJ did not commit any of these errors.

**1.    The ALJ Properly Developed A Full And Fair Record.**

Claimant contends that the ALJ failed to properly advise Claimant of his right to be represented by counsel at his administrative hearing. The Commissioner concedes that the ALJ did not obtain a valid waiver of counsel at the hearing, but asserts that this failure was not prejudicial to Claimant because the ALJ nonetheless developed a full and fair record. [ECF No. 32, at 2-3.] The Court finds the ALJ did properly develop the record despite failing to obtain a valid waiver of counsel at the hearing.

**A. The ALJ Did Not Obtain A Valid Waiver Of Counsel.**

A claimant has a statutory right to counsel at a disability hearing. 42 U.S.C. § 406; 20 C.F.R. § 404.1700. A claimant may waive this right if he is "given sufficient information to

enable him to intelligently decide" whether or not to obtain counsel. *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991). For a waiver of counsel to be valid, an ALJ must explain to the claimant: (1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees. *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994).

The ALJ did not fully explain to Claimant during the hearing how an attorney could have helped him during the proceedings. The ALJ asked Claimant if he had obtained representation, and Claimant stated that he had not, but was still trying to find an attorney. (R. 31.) After the ALJ asked Claimant to confirm he did not feel fully prepared for a hearing, however, Claimant responded that he did feel prepared. *Id.* The ALJ then concluded: "Okay, well, I take it you've been fully advised of your rights – you understand your right – so you've decided to go forward without [representation]." (R. 32.)

The ALJ's conclusion that Claimant understood his right to an attorney does not satisfy the ALJ's burden to ensure a *pro se* claimant understands how an attorney might aid in the proceedings, as well as the possibility of free counsel or a contingency arrangement and a limitation on attorney fees. Furthermore, Claimant's statement "I know I'm telling the truth, so I'd like to get on with it" indicated he did not adequately understand how an attorney would have benefited him during these proceedings. *Id.* As the Commissioner concedes, the ALJ thus did not obtain a valid waiver of counsel from Claimant in these proceedings. [ECF No. 32, at 2.] This is not an error that entitles Claimant to a remand unless the Court finds the ALJ did not develop a full and fair record. *Binion*, 13 F.3d at 245.

**B. The ALJ Fulfilled His Obligation To Develop A Full And Fair Record.**

An ALJ's basic duty to develop a full and fair record in Social Security hearings is heightened when a claimant appears without counsel. In such cases, the ALJ must "scrupulously and conscientiously [ ] probe into, inquire of, and explore for all the relevant facts." *Nelms*, 553 F.3d at 1098. *See also Thompson*, 933 F.2d at 585. In cases like this one, where an ALJ does not obtain a valid waiver of counsel, the burden is on the Commissioner to demonstrate that the ALJ adequately developed the record. *Binion*, 13 F.3d at 245. Once the Commissioner establishes the ALJ developed a full and fair record, a claimant has the opportunity to rebut this by showing prejudice or an evidentiary gap. *Id.* In order to do so, a claimant must demonstrate a significant and prejudicial omission from the record by pointing to specific, relevant information, such as medical records, that the ALJ failed to consider. *Nelms*, 553 F.3d at 1098.

In developing the record, the ALJ considered Claimant's testimony at the hearing about his back pain and mental health impairments, in addition to the various medical opinions included in Claimant's medical record. During the hearing, the ALJ questioned Claimant about his affective disorder, and whether there were any changes in his condition between December 2004 and April 2010. (R. 35.) The ALJ also questioned Claimant about any treatment he was receiving for his mental impairments, specifically trying to obtain information from Claimant about the treatment he received during 2009 and 2010. (R. 37-39.) The ALJ took Claimant's testimony about his psychological impairments into account in the opinion. (R. 16.)

The ALJ additionally considered the medical opinions of several doctors who performed psychological evaluations of Claimant in 2010. The ALJ first referenced Claimant's psychological evaluation for Disability Determination Services (DDS) in March 2010, in which Dr. Jeffrey Karr diagnosed Claimant with polysubstance abuse and mood disorder not otherwise

6

specified, noting that Claimant presented in an unremarkable manner and did not exhibit behavior problems, visible physical distress, or cognitive difficulty. (R. 316.) The ALJ also gave great weight to the evaluations performed by two state agency psychological consultants, concluding that these evaluations were supported by substantial findings of record. (R. 21.) In April 2010, state agency consultant Dr. Terry Travis found Claimant's mental impairments of depression NOS and substance addiction disorder (currently reported in remission) to be not severe based on his evaluation of Claimant. (R. 320, 325, 329.) In reaching this determination, Dr. Travis considered Dr. Karr's mental status exam, Claimant's ADL reports indicating good daily independent functioning in all respects, and the fact that Claimant was not currently receiving treatment for a mental disorder. (R. 329.) In November 2010, Dr. Glen Pittman similarly found Claimant's psychiatric symptoms of depression NOS and substance addiction disorder in remission were not severe. (R. 358.) Both state agency psychological consultants also concluded that medical improvement had occurred with regard to Claimant's mental impairments. (R. 329, 358.) Claimant has not disputed the weight the ALJ gave to any medical opinion in the record.

Claimant argues in his initial brief that the ALJ failed to meet his heightened duty to "scrupulously and conscientiously" acquire all of the relevant facts during the hearing. [ECF No. 24, at 10.] Crucially, though, Claimant did not identify any specific omissions from the record, which would be required for the Court to find the ALJ failed to assist Claimant in developing the record fully and fairly. *See Nelms*, 553 F.3d at 1098. This would normally be fatal for Claimant's argument. In his reply brief, however, Claimant identified one alleged gap in the evidentiary record: his May 2012 hospitalization for depression and suicidal ideation. [ECF No. 33, at 2.] Typically, an argument that is not fully developed until the reply brief is waived.

*Bodenstab v. County of Cook*, 569 F.3d 651, 658 (7th Cir. 2009). The Court, however, will still address this argument on its merits.

After being hospitalized for depression and back pain in May 2012, Claimant was diagnosed with major recurrent depression, suicidal ideation and a Global Assessment of Functioning ("GAF") score of 30. (R. 468.) Although the ALJ did not delve into this hospitalization in depth at the hearing, the record before the ALJ included Claimant's medical records from the hospitalization. (R. 468-69.) The ALJ clearly considered these records because his opinion discussed the 2012 hospitalization and cited to the relevant medical records. (R. 16, 468-69.) And Claimant has not explained why these medical records did not sufficiently describe the 2012 hospitalization—he merely argues the ALJ did not probe deeply enough into the details of the hospitalization during the hearing. [ECF No. 33, at 2-3.]

Moreover, because Claimant is challenging the ALJ's finding of medical improvement in April 2010, evidence related to the May 2012 hospitalization is relevant only to the extent it demonstrates Claimant's condition in April 2010 and whether Claimant was disabled at that time. *Hatten v. Comm'r of Soc. Sec.*, 2013 WL 586851, at *6 (C.D. Ill. Jan. 22, 2013), *report and recommendation adopted*, 2013 WL 586824 (C.D. Ill. Feb. 13, 2013). *See also Johnson v. Apfel*, 191 F.3d 770, 774-75 (7th Cir. 1999). There is no medical or other evidence in the record that links the condition of Claimant's mental impairments in 2012 to his condition in 2010.

Most importantly, as discussed above, the record before the ALJ contained three medical opinions based on evaluations of Claimant performed in 2010, shortly before his disability was determined to have ended. In each of these opinions, Dr. Karr, Dr. Travis, and Dr. Pittman found Claimant's mental disorders to be not severe at that time, and both Dr. Travis and Dr. Pittman specifically noted that medical improvement had occurred. (R. 316, 329, 358.) Based on the

significance of these psychological evaluations of Claimant in 2010, and because the hospitalization and diagnosis at issue occurred two years after Claimant's disability was determined to have ceased, the ALJ's failure to collect more substantial evidence regarding the 2012 hospitalization does not rise to the level of a prejudicial omission. For the foregoing reasons, the Court finds that the ALJ developed the record fully and fairly in this case, despite failing to obtain a valid waiver of counsel from this *pro se* Claimant.

**2.     The ALJ's Finding Of Medical Improvement Is Supported By Substantial Evidence.**

Claimant asserts the ALJ did not properly address Claimant's mental impairments in concluding that medical improvement had occurred. The Social Security regulations define medical improvement as "any decrease in the medical severity of [the claimant's] impairment(s)" since the most recent decision finding the claimant to be disabled, and the decrease must be based on "changes (improvement) in the symptoms, signs and/or laboratory findings" associated with the impairment(s). 20 C.F.R. § 404.1594(b)(1); *see Blevins v. Astrue*, 415 F. App'x 583, 585 (7th Cir. 2011).

Claimant first contends that the ALJ justified his finding of medical improvement solely on Claimant's lack of treatment for his mental impairments prior to April 1, 2010, which was insufficient evidence to support a determination of improvement. [ECF No. 24, at 11.] The factual premise of this argument, however, is contradicted by the record. As part of his determination at step three that medical improvement had occurred, the ALJ concluded that the "medical evidence supports a finding that, as of April 1, 2010, there had been a decrease in medical severity of the impairments present at the time of the CPD." (R. 18.) The ALJ then added: "This is supported by the lack of treatment which is shown by the objective medical evidence and the Claimant's testimony." *Id.* The language in this paragraph shows the ALJ

based his finding on the "medical evidence" discussed elsewhere in the opinion, as supported by Claimant's lack of treatment, rather than the other way around.

Moreover, as discussed above, the ALJ extensively analyzed the medical evidence in the record, including the medical opinions of several doctors who performed psychological evaluations of Claimant in 2010, when determining Claimant's RFC before step seven. An ALJ's decision "should not be overturned simply because the relevant analysis is set forth at a different step of the process." *Capman v. Colvin,* 617 F. App'x 575, 579-80 (7th Cir. 2015). The ALJ's discussion of Claimant's impairments and the medical evidence as part of the RFC determination provided "the necessary detail to review the ALJ's step three determination in a meaningful way," and the Court will not "discount it simply because it appears elsewhere in the decision." *Curvin v. Colvin,* 778 F.3d 645, 650 (7th Cir. 2015). *See also Howard v. Colvin,* 2015 WL 4394107, at *3 (N.D. Ind. July 16, 2015); *Aguirre-Millhouse v. Colvin,* 2015 WL 3757423, at *4 (N.D. Ill. June 15, 2015).

Claimant also argues that the ALJ misconstrued his March 2010 psychological evaluation for DDS, which Claimant asserts was consistent with his evaluation in November 2004. [ECF No. 24, at 13.] These two evaluations, however, are not as similar as Claimant contends. Although Claimant reported some similar symptoms in both, such as the fact that he was not taking any medications for his psychological impairments and that he felt that his mental illness stemmed from his back problems, there were significant differences between the two doctors' diagnoses that Claimant has failed to acknowledge. (R. 314, 517-18.) In 2004, Dr. Alan W. Jacobs diagnosed Claimant with bipolar II disorder, currently depressed and un-medicated, noting that Claimant described manic episodes, was "rather serious and overall seen as being mild to moderately depressed," and was likely in the borderline range of intellectual functioning.

(R. 517-19.) In 2010, Claimant presented in an unremarkable manner and did not exhibit behavior problems, visible physical distress, or cognitive difficulty, and was diagnosed by Dr. Karr with polysubstance abuse and mood disorder not otherwise specified. (R. 316.)

As discussed above, the ALJ's RFC analysis considered and gave great weight to the medical opinions of two state agency psychological consultants who evaluated Claimant in 2010. Both Dr. Travis and Dr. Pittman concluded that Claimant's psychological impairments were not severe, and that medical improvement had occurred based on their evaluations of Claimant in April and November of 2010, respectively. (R. 329, 358.) The ALJ additionally stated in his decision that he gave "the state agency medical consultants' opinions great weight because they are well supported by the substantial findings of record," indicating that these medical evaluations formed the primary basis for his decision that medical improvement had occurred in Claimant's mental impairments as of April 2010. (R. 21.) Although the ALJ looked to Claimant's lack of treatment around that time as additional support for his finding of medical improvement, the Court finds that the ALJ based this determination on the medical evidence present in the record.

To be clear, the Court is not saying the ALJ should have considered Claimant's lack of treatment around or before April 2010 when determining if medical improvement had occurred. The Court recognizes that a mental illness "may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment," and as such, lack of treatment cannot serve as the sole indication Claimant was not suffering from a mental impairment in 2010. *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006). It is clear, however, that the ALJ did not base his finding of medical improvement solely on Claimant's apparent lack of treatment in April 2010.

For the reasons stated above, the Court concludes the ALJ properly addressed Claimant's mental impairments when finding medical improvement had occurred as of April 1, 2010.

**3.     The ALJ Properly Accounted For The Combined Effects Of Claimant's Impairments In The RFC Finding.**

Claimant contends that the ALJ's determination that Claimant had the RFC to perform the full range of medium work failed to take into account the full effect of Claimant's impairments in combination. Claimant's main critique of the ALJ's determination is that the ALJ "failed to properly consider the aggregate impact of the [Claimant's] back impairment, obesity and psychological disorders along with the accompanying symptoms of chronic pain on [his] ability to work." [ECF No. 24, at 14.] Specifically, Claimant argues that based on his long and consistent history of complaints about back pain, the ALJ's RFC finding is at odds with the medical evidence regarding his back pain, and that the ALJ failed to consider the impact of Claimant's obesity in conjunction with his other impairments. *Id.* These arguments are not persuasive for several reasons.

While it is true that Claimant has a consistent history of complaints about back pain, the ALJ considered the relevant medical evidence regarding Claimant's back pain in finding that Claimant had the RFC to perform the full range of medium work. Although an ALJ "must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record," in this case, the ALJ did not succumb to the temptation to "play doctor." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000), *as amended* (Dec. 13, 2000). *See also Rohan v. Chater,* 98 F.3d 966, 968-70 (7th Cir. 1996). Rather, the ALJ explained in detail which medical evaluations and opinions he considered in making the RFC determination, and did not supplement or supplant these medical opinions with his own judgments.

The ALJ initially described Claimant's hospitalization in February 2009, stating that Claimant went to Ingalls Hospital complaining of back pain and ambulating with a cane, but an examination of his back revealed tenderness to palpitation and a "normal inspection." (R. 19, 252, 254.) The ALJ additionally mentioned Claimant's complaints of back pain during several routine visits with Dr. Shaik in 2010. (R. 19.) The ALJ then referenced in detail the two internal medicine examinations that Claimant had for DDS in April and December 2010, objectively describing each physician's examination of Claimant's back pain and related symptoms. (R. 19-20.) The ALJ explained that in Claimant's April 2010 evaluation by Dr. M. S. Patil, Claimant reported constant stiffness in his back and mild pain when walking or standing for more than 15 minutes, and had a reduced range of motion in his back but no paravertebral tenderness or spasm upon examination. (R. 19-20, 340-42.) The ALJ added that Dr. Patil found no obvious deformities in Claimant's spine, Claimant's gait was normal and he did not use an aiding device, he walked 50 feet normally, and he could walk on his heels and toes, tandem walk, squat, and arise. *Id.* X-rays taken of Claimant's lumbosacral spine at that time were normal, and the diagnostic impression was "chronic low back pain syndrome." *Id.*

The ALJ also described Claimant's second consultative examination with Dr. Ezike in December 2010, when Claimant reported his back pain was constant, achy, occasionally sharp and stabbing, about a 9/10 in severity, and radiating across his entire lower back. (R. 20, 360.) During the exam, Claimant was able to get on and off the exam table with no difficulty but had difficulty getting up from a chair, he could walk more than 50 feet without support, his gait was non-antalgic without the use of an assistive device, he was able to perform a toe/heel walk, and the range of motion in his cervical spine and lumbar spine were both normal. (R. 360-62.) The ALJ included Dr. Ezike's impression of "chronic low back pain probably due to degenerative

disc disease." (R. 362.) After explaining these evaluations, the ALJ stated that he "took all of the above evidence in consideration of the residual functional capacity" and additionally noted that Claimant's medical evidence shows Claimant had "recently sought treatment more regularly for his back pain" in 2011 and 2012. (R. 20.) The ALJ also mentioned that he gave great weight to the opinions of state agency physicians Dr. Reynaldo Gotanco in April 2010 and Dr. Frank Jimenez in January 2011, who both concluded after reviewing the record that Claimant could perform medium work although he should avoid machinery and hazards. (R. 21, 332-36, 366-72.)

Although Claimant asserts the ALJ's RFC determination is at odds with the medical evidence relating to his back pain, Claimant does not argue that any of these medical opinions should not have been considered by the ALJ, nor does Claimant offer any contrary medical opinions that support an alternative conclusion. In fact, Claimant's brief cites many of the same medical evaluations the ALJ includes in his RFC analysis, and merely interprets these opinions in a different way. [ECF No. 24, at 14.] It is not the role of this Court to "substitute [its] judgment for that of the ALJ by reweighing facts," and, furthermore, the Court has not found the ALJ "played doctor" by replacing relevant medical evidence with his own judgments on Claimant's back pain. *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 447 (7th Cir. 2004). Claimant may not agree with the ALJ's evaluation of the medical evidence regarding his back pain, but Claimant has not demonstrated any relevant evidence the ALJ failed to consider in making the RFC determination. Based on a review of the record as a whole, and because the Court will not reconsider evidence in reviewing the ALJ's findings, the Court finds there was substantial evidence to support the ALJ's RFC determination.

Claimant also contends that the ALJ failed to consider the impact of Claimant's obesity in conjunction with his other impairments, specifically arguing that the ALJ erroneously dismissed it as a factor given that Claimant's consistent back pain has been "likely aggravated by his obesity." [ECF No. 24, at 14-15.] In his decision, the ALJ noted that Dr. Ezike stated Claimant was obese in his consultative examination in December 2010, but that "there are no complaints related to obesity and his examinations did not show any limitations in moving about." (R. 17, 362.) Although Claimant is correct that the ALJ "must consider the limiting effects of obesity on a claimant's overall impairment," it also is true that a claimant must explain how "obesity limits [his] functioning and exacerbates [his] impairments." *Hisle v. Astrue,* 258 F. App'x 33, 37 (7th Cir. 2007). Claimant has not done so here. He merely argues that the ALJ should have discussed his obesity more extensively because it "likely aggravated" his back pain, but does not point to any medical evidence in the record that demonstrates how his obesity exacerbates his back pain.

As discussed above, the ALJ also considered and discussed the medical opinions of several doctors who performed full physical examinations of Claimant, and who considered Claimant's weight and obesity in evaluating his symptoms. When discussing Claimant's obesity in the decision, the ALJ mentioned the one examination that explicitly noted Claimant's obesity, and looked to the other consultative examinations to find that Claimant did not appear to have any "limitations in moving about" related to his obesity. (R. 17.) Claimant does not point to any medical evidence that suggests his obesity is a significant medical impairment. For this reason, even if the ALJ failed to address the limiting effects of Claimant's obesity to the extent necessary, this mistake would be excused by harmless error because the ALJ did consider the medical opinions of doctors who were aware of Claimant's obesity. *See Prochaska v. Barnhart,*

454 F.3d 731, 737 (7th Cir. 2006) (recognizing harmless error when an ALJ fails to explicitly consider obesity but indirectly factors obesity into the decision by relying on evidence that accounts for the obesity).  The Court thus finds the ALJ adequately considered the impact of Claimant's obesity in combination with his other impairments, and concludes that the ALJ properly accounted for the combined effects of Claimant's impairments in the RFC determination.

For the foregoing reasons, the Court concludes that the ALJ did not err in determining Claimant's disability ended as of April 1, 2010.  The Court notes, however, that Claimant's medical records from 2012, particularly his hospitalization in May 2012 for depression and suicidal ideation, suggest that Claimant's impairments may have worsened since his disability abated in 2010.  According to SSA policies, "if the evidence in any way suggests that the claimant may have become disabled again after his disability ceased, the adjudicator will suggest the filing of a new application for benefits." *Johnson,* 191 F.3d at 774-75.  *See* Acquiescence Ruling 92–2(6), 1992 WL 425419 (S.S.A.).  Therefore, the Court informs Claimant he may be able to refile for Disability Insurance Benefits if he believes his impairments have again become disabling since April 1, 2010.

## IV. CONCLUSION

For the reasons stated above, Claimant's motion for summary judgment [ECF No. 23] is denied, and the Commissioner's motion for summary judgment is granted [ECF No. 31].  The decision of the Commissioner is affirmed.  This is a final judgment.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: July 15, 2016